**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*, ANNE MELISSA DOWLING, ACTING DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, as Rehabilitator for TRIAD GUARANTY INSURANCE CORPORATION and TRIAD GUARANTY ASSURANCE CORPORATION,**

**Plaintiff,**

**v.**

**AAMBG REINSURANCE, INC., and BANK OF AMERICA CORPORATION,**

**Defendants.**

**Case No. 16 C 7477**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Normally a home purchaser is required to pay 20% of the purchase price as a down payment in order to compensate for the risk of default. In order to increase the supply of home purchasers, lenders started to allow under-qualified home purchasers (those who could not make the 20% down payment) to borrow more than the 80% if they purchased Private Mortgage Insurance ("PMI") to compensate the lender in case the borrower defaults. In order to protect themselves from losses due to defaults, insurance providers of PMI would purchase reinsurance

in order to shift some of the risk of default. The PMI provider would pass on the reinsurance premium to the borrower in the form of a higher premium for the PMI. The PMI provider would split the premium with the reinsurer, which is called a "ceding payment," in accordance with the risk assumed. Some lenders, which is apparently the case here, have found it economical to have "captive" reinsurers, *i.e.,* reinsurers that are owned or controlled by the lender. Apparently, this enables the lender to figure its risk based more closely on its own loss experience rather than on the experience of the industry as a whole. Thus, the captive reinsurer does not reinsure the loans of any lender other than those it specifically lists in its agreement with the PMI provider.

This case arises because a PMI provider, Plaintiffs in this case, Triad Guaranty Insurance Corporation and Triad Guaranty Assurance Corporation (hereinafter, collectively, "Triad"), was placed in rehabilitation on December 12, 2012. The Plaintiff Anne Melissa Dowling, acting Director of Insurance for the State of Illinois (since replaced by Jennifer Hammer, Director of Insurance), was appointed the Rehabilitator on that date.

In 2016, this suit was filed by the Rehabilitator on behalf of Triad against AAMBG Reinsurance, Inc. ("AAMBG"), and Bank of America Corporation ("BOA"). As the name suggests, AAMBG had

provided reinsurance to Triad for mortgage loans insured by Triad on behalf of certain lenders, referred to as "approved originators," pursuant to a written agreement (Exhibit B to the Amended Complaint). Under the agreement, AAMBG was obligated to pay Triad a portion of all cumulative net losses suffered by Triad during a given policy year. The losses were to be divided as follows: Triad was to pay the first 4% of cumulative Net Losses that occurred during the policy year, AAMBG was to pay the next 10% of cumulative Net losses, and Triad was to be liable for cumulative net losses that were 14% or more. In other words, AAMBG had a 10% reinsurance band between net losses of 4% and 14%. Triad suffered the first 4% of net losses and all losses that exceeded 14%. While AAMBG was obligated to reinsure Triad for all loans that originated from the approved originators, Triad could reject any loan from the approved originators and decline to issue PMI to the proposed borrower.

In Count I of the First Amended Complaint, Plaintiffs allege that AAMBG warranted and represented in its agreement with Triad that the approved originators would disclose "the dividends and the benefits it derived from the mortgage reinsurance premiums to the borrowers whose loans were subject to the agreement," which the approved originators did not do, and as a result Triad suffered damages. Count II of the

Complaint alleges that AAMBG and the approved originators violated the duty of good faith and fair dealing implied in the contract by "vetting" the borrowers to be referred to Triad for PMI so as only to refer those having the highest level of default risk. This, according to the Complaint, allowed AAMBG and the approved originators "to minimize their risk of reinsuring loans that could go into default, while maximizing profits for AAMBG and its affiliated Approved Originators." Count III applies only to AAMBG and alleges that AAMBG violated Section 8 of RESPA by accepting excessive reinsurance premiums from Triad, which constituted an illegal kickback because the premiums received exceeded the value of the reinsurance provided. Count IV seeks unjust enrichment against both, apparently as an alternative to the breach of contract counts.

The Defendants have filed Motions to Dismiss all counts. BOA seeks dismissal of itself from the entire lawsuit contending that it is not a successor to any of the Approved Originators. BOA, in the alternative, joins with AAMBG in seeking dismissal of Counts I and II on multiple grounds. First, they claim that the Complaint alleges that the contract between Triad and AAMBG is illegal under RESPA and as such Plaintiffs cannot sue on an illegal contract. Second, AAMBG asserts that Count I does not state the source giving rise to any alleged duty it owed to

Triad to provide information to the borrowers. Third, they assert that the Complaint fails to allege any damages to Triad resulting from the alleged failure to provide information to the borrowers regarding the amount of the reinsurance premium. With respect to Count II, they assert that the agreement does not address or restrict the referral of borrowers to Triad nor obligate Triad to insure any potential borrower so referred. Moreover, they assert that Count II does not make economic sense and as a consequence is implausible. AAMBG asserts that Count III, RESPA violation, is time-barred. It also asserts that government regulations specifically allow for captive reinsurance arrangements, such as existed between itself and the approved originators, provided there is a legally binding reinsurance contract, the reinsurer complies with capital and reserve requirements of state law, and there is a real transfer of risk with the likelihood of losses occurring to the reinsurer. It asserts that the Complaint fails to allege any facts to show that AAMBG failed to meet any of these RESPA requirements and, for this reason, Count III is implausible and falls afoul of *Iqbal/Twombly*. AAMBG also points out that Triad certified to HUD, the appropriate regulatory agency, that its agreement with AAMBG met all RESPA requirements. Finally with respect to Count IV, AAMBG asserts that Plaintiffs may not

proceed with an unjust enrichment claim because the complaint alleges that there is a contract between Triad and AAMBG under which Triad is suing in Count I. As an alternative, AAMBG asserts that Count IV is barred by a five-year statute of limitations. (BOA asserts that Count IV is not directed against it, an assertion to which Plaintiffs have apparently assented by failing to respond to this assertion in their responsive brief.)

Plaintiffs reply with respect to BOA that at least one of the Approved Originators, Standard Federal, was owned by BOA during some of the time period set forth in the Amended Complaint and say that they will amend the Complaint if necessary to allege the correct ownership connection. With respect to Count I of the Amended Complaint, Plaintiffs reply that they have adequately pleaded that AAMBG and BOA had a duty of disclosure to the borrowers of the cost of the reinsurance premiums and that they did not comply with this duty. They also reply that the Complaint alleges that Plaintiffs suffered damages and that this is sufficient at this stage to get past a motion to dismiss. They also reply that Count II of the Complaint does in fact make economic sense and does allege that they suffered damages. With respect to Count III, the Rehabilitator replies that she was not appointed until December 12, 2012, and therefore she could not have been aware

of the RESPA violation, so that Count III does not violate the five-year statute of limitations. She further replies that Triad's RESPA certification concerning the legality of its agreement with AAMBG cannot be imputed to her and that Plaintiffs adequately allege a RESPA violation. With respect to Count IV, Plaintiffs assert that they are merely pleading unjust enrichment as an alternative to Count I as they are allowed to do. With respect to the statute of limitations argument, she asserts that, like Count III, she could not have reasonably known about the breaches of contract or the unjust enrichment in the time allowed by the statute of limitations.

## II. DISCUSSION

### A. Count I

With respect to Count I, Plaintiffs argue that the provisions of AAMBG's agreement with Triad give AAMBG the right to notify Triad if a loan is withdrawn at the borrower's request and give AAMBG the right to add an affiliate to the Schedule of Approved Providers so long as the affiliate is shown on AAMBG's holding company disclosure statement, and that these provisions amount to the acceptance by AAMBG of the duty to notify the borrowers of the cost of the reinsurance premiums. However, these contractual provisions are the only ones mentioned by Plaintiffs in Count I, and they say nothing which could give

rise to a duty requiring AAMBG to make any disclosures to the borrowers at all.

With respect to Count I as it applies to BOA, Plaintiffs have argued that they have provided plenty of information in their Amended Complaint to put BOA on notice of the nature of the claim it needs to defend against. The specific allegations supporting Count I are contained in paragraphs 42 through 45 of the amended complaint. These paragraphs read as follows:

> 42. Pursuant to the Agreement, each Approved Originator was to give or cause to be given to each borrower whose loan is or may be subject to the Agreement a disclosure as appropriate regulatory authorities may suggest or require.
>
> 43. The United States Department of Housing and Urban Development ("HUD") is an appropriate regulatory agency.
>
> 44. HUD requires the disclosure of the benefits that they were receiving including the premiums and other financial kickbacks.
>
> 45. AAMBG and its affiliated Captive Originators failed to adequately provide disclosures to the borrowers at the time of closing the benefits that they were receiving from Triad under the terms of the Agreement.
>
> 46. AAMBG and the Approved Originators breached their duties under the Agreement.

These allegations do not apparently apply to AAMBG, and are conclusory and devoid of any specifics as they refer to BOA. The "plausible" reading with respect to BOA is that it failed to

disclose to the borrower that it was requiring the borrower to get PMI, that the borrower would have to pay the PMI premium, and that BOA was receiving benefits in the form of kickbacks. What the Complaint does not allege is who the affected borrower was, the specific regulation violated, how it was violated, and, most important, how Triad was damaged. With respect to the failure to allege damages, Plaintiffs' response is limited to the statement that the "Complaint does contain allegations that the Plaintiff has sustained damages from [Defendants]' breach of the agreement" without further elucidation. There could not be a more "conclusionary" statement. A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Against *Iqbal,* Plaintiffs cite cases that long preceded *Iqbal,* such as *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A review of Plaintiffs' Amended Complaint does nothing to demonstrate that they have a plausible complaint against either Defendant. Accordingly, Count I is dismissed.

**B. Count II**

Count II is based on allegations that Defendants' conduct violated the duty of good faith and fair dealing. The crux of Count II is Plaintiffs' allegation that "on information and belief" Defendants "vetted their borrowers and only referred

borrowers with the highest level of default risk to Triad for private mortgage insurance." By way of explanation, Plaintiffs point out that the agreement between Triad and AAMBG provides for three levels of coverage: the first level of net losses up to 4% is to be borne by Triad; the second level of net losses, from 4% up to 14%, is to be borne by AAMBG; and the third level, over 14%, is to be borne by Triad. Plaintiffs' theory therefore is that AAMBG, with the agreement of the authorized loan originators (here BOA), deliberately referred the borrowers with the highest risk of default to Plaintiffs so that they could obtain higher premiums due to the greater risk, knowing that their risk was capped at 14%, "thereby increasing the profits to AAMBG." Plaintiffs give one example "for demonstrable purposes": assume the policy claims loss ratio was 18%, and "AAMBG would reap the benefits of the higher premiums while not being required to reimburse Triad for Net Loses that exceeded the Reinsurer Limit of fourteen percent (14%)." However even under this scenario, which Plaintiffs do not allege ever occurred, AAMBG is stuck with 10% of the net loss while Triad is stuck with only 8% (4% plus 4%). Thus, AAMBG loses more than Triad. It does not make economic sense to argue that AAMBG has an incentive to send poor risks to Triad. They also do not allege what Defendants did with the so-called lower risk

borrowers or why Triad only accepted high risk borrowers for its PMI. Count II is dismissed as totally implausible.

### C. Count III

Plaintiffs argue that in Count III they have adequately alleged a RESPA violation. The only provisions of RESPA they cite in their response to AAMBG's motion are sections 8(a) and 8(b). Totally lacking is any response to AAMBG's argument that it is entitled to the protection of RESPA's "safe harbor" provision set forth in Section 8(c) as interpreted by agencies such as HUD. Sections 8(a), (b) and (c) provide in relevant part:

> **(a) Business referrals:** No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> **(b) Splitting charges:** No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.
>
> **(c) Fees, salaries, compensation, or other payments:** Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.

According to HUD’s public guidance on the applicability of Section 8 to captive reinsurance programs, sharing of premiums is permissible provided they (1) are for reinsurance services actually furnished and (2) are bona fide compensation that does not exceed the value of such services. Ex. B to AAMBG’s brief. With respect to the first requirement: there must be a legally binding contract for reinsurance with terms and conditions conforming to industry standards; the reinsurer must post capital and reserves satisfying state law and must provide adequate reserves so that the funds can satisfy the claims; and there must be real transfer of risk.

Plaintiffs have not, either in their amended complaint or in their brief, made any attempt to show that Section 8(c) does not apply to AAMBG’s contract with Triad. They do not allege that the agreement to provide reinsurance was illusory. In fact, Count II makes the point that the net losses may actually be as high as 14%, which would require AAMBG to absorb a net loss of 10% and at that point would make AAMBG’s loss two-and-one-half times the loss allocated to Triad. This makes AAMBG’s risk far from illusory. Perhaps if the Plaintiffs had alleged that annual net losses had never, or almost never, exceeded 4% so that AAMBG did not make any payments (or very few payments) nor expect to under its reinsurance agreement with Triad and

that it had received substantial premiums from Triad far in excess of the risk, an argument could be made that the agreement to reinsure was indeed illusory. However, Plaintiffs have not made this argument. As stated earlier, Plaintiffs do not even mention Section (c)

Plaintiffs next argue that the statute of limitations of three years does not require dismissal of Count III because they have put forth a "continuing violation" theory to avoid the statute of limitations. They allege that each distribution to AAMBG from the Triad trust account constitutes a separate violation. This argument was explicitly rejected in *Mullinax v. Radian Guarantee Inc.,* 199 F.Supp.2d 311, 325 (M.D.N.C. 2002) ("Given RESPA's focus on the settlement transaction itself and the use of the phrase 'at the time of the violation,' the Court finds that any violation of RESPA occurred, if at all, when Plaintiffs initially obtained primary mortgage insurance from Radian on the date of the closing."). Plaintiffs argue otherwise but fail to cite any case law in support of their position. It is clear that the last possible violation of RESPA occurred in 2008 when Triad issued the last of its PMI policies and, presumably, last purchased reinsurance from AAMBG, all of which would have been finalized at the loan closing.

Accordingly, the statute of limitations would have run in 2012, approximately four years before this suit was filed.

Based on the failure to allege a viable claim against AAMBG for RESPA violations and because the statute of limitations for RESPA claims had run, Count III is dismissed.

**D. Count IV**

AAMBG argues that Plaintiffs cannot maintain a claim for unjust enrichment because an actual contract governed their relationship, and unjust enrichment is based on a contract implied in law. Plaintiffs contend that their unjust enrichment claim is brought as an alternative. However, the only basis for contending that there was no contract between Triad and AAMBG is Defendants' assertion in their opening brief that Plaintiffs alleged that the contract violated RESPA, and if that that were the case, the contract would be void and Plaintiffs could not sue under it. However, the Court did not accept this argument (nor did Defendants) so Plaintiffs have pleaded a valid and enforceable contract, and they do not allege otherwise. Moreover, Count IV is not pled in the alternative. Paragraph 64 of Count IV pleads that "[P]laintiff restates and realleges paragraphs 1-38 as set forth fully herein." Paragraph 10 states "[a]t all times relevant hereto, Triad and AAMBG were parties to the 'Triad Guaranty Insurance Corporation Excess of Loss Book

Year Reinsurance Agreement No. A-10 and the Amendments thereto ('Agreement'). (Attached hereto as Exhibit B)." This is fatal to a claim for unjust enrichment. *Cohen v. American Security Insurance Co.,* 735 F.3d 601, 615 (7th Cir. 2013) ("[Plaintiff] acknowledges throughout that there is an express contract. She claims that Wachovia is liable for breaching this express contract but that if it did not breach the contract, then it owes damages for unjust[ly] enriching itself. This manner of pleading unjust enrichment is impermissible."). The same is true here. Count IV is dismissed.

## III. CONCLUSION

For the reasons stated herein, the Motions to Dismiss of Defendants AAMBG and Bank of America are granted, and the Amended Complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated:6/1/2017